1

2

3

4               IN THE UNITED STATES DISTRICT COURT

5               FOR THE EASTERN DISTRICT OF CALIFORNIA

6

7   Virgil E. Holt,                    )    CV-1-06-1719-DCB P
                                       )
8              Plaintiff,              )    **ORDER**
                                       )
9   vs.                                )
                                       )
10  A. K. Scribner, et al.,            )
                                       )
11             Defendants.             )
                                       )
12  ────────────────────────────────

13          Defendants' Motion for Summary Judgment is pending before the Court.

14                           **BACKGROUND**

15          On November 29, 2006, Plaintiff Virgil E. Holt, currently confined in the California

16  State Prison in Lancaster,  California, filed a *pro se* civil rights Complaint pursuant to 42

17  U.S.C. § 1983. On October 30, 2008, the Court dismissed the Complaint with leave to

18  amend. This case was reassigned to the undersigned judge on November 26, 2008. On the

19  same date, the Court also granted Plaintiff a 30-day extension of time to file an amended

20  complaint. On December 31, 2008, Plaintiff filed a Second Motion for Extension of Time.

21  On January 5, 2008, Plaintiff filed a First Amended Complaint. On February 20, 2009,

22  Plaintiff filed a Second Amended Complaint (SAC).  The Court then ordered  Defendants

23  Hadsadsri, Kim, Abromowitz, Dang, and Thirakomen to answer Counts Four, Six, Nine,

24  Ten, Eleven, and Fourteen of the Second Amended Complaint and dismissed  the remaining

25  claims and Defendants.

26          Plaintiff names the following Defendants, who were employed at the California State

27  Prison-Corcoran, in the Second Amended Complaint: Warden A.K. Scribner; Dr. J. Dang;

28

Dr. Clive Greaves; Dr. Hadsadsri; Dr. J. Kim; Chief Medical Officer Dr. John D. Klarich; Dr. Mies; Dr. J. Abromowitz; Dr. K. Thirakomen; and Does 1–5.

Originally Plaintiff raised 15 claims for relief in his SAC:

(1) Defendant Mies was deliberately indifferent to Plaintiff's serious medical needs when he failed to ensure that Plaintiff received prescribed treatment and Defendant Nurse Doe 1 (Defendant Chacon) was deliberately indifferent when he or she failed to deliver the prescribed treatment order to the prison pharmacy and, instead, threw it in the trash;

(2) Defendant Dang was deliberately indifferent when he ordered lab tests for Plaintiff but refused to provide immediate treatment for Plaintiff's previously diagnosed pneumonia and informed Plaintiff that he had forgotten to write a lab order for tests to determine appropriate treatment;

(3) Defendant Dang was deliberately indifferent when he diagnosed Plaintiff with bronchitis but refused to prescribe treatment and stated "it will go away on its own";

(4) Defendant Hadsadsri was deliberately indifferent when, after Plaintiff informed him of Plaintiff's previously diagnosed medical conditions including pneumonia, bronchitis and hepatitis A, Defendant Hadsadsri taunted Plaintiff and refused to provide treatment for any of the conditions;

5) Defendant Greaves was deliberately indifferent when he failed to ensure that Plaintiff received the lab test and prescription medications that Defendant Greaves ordered and Defendant Doe 3 failed to deliver Defendant Greaves' medical orders to the prison pharmacy;

(6) Defendant Kim was deliberately indifferent when he refused to investigate Plaintiff's illnesses or provide treatment even though he was aware that Plaintiff was experiencing symptoms of an autoimmune disorder;

(7) Defendants Mies, Dang, Hadsadsri, Greaves, and Kim refused to provide treatment for Plaintiff's multiple medical conditions;

(8) Defendant Klarich failed to respond to Plaintiff's letter complaining about his medical treatment;

(9) Defendant Abromowitz was deliberately indifferent when he diagnosed Plaintiff with herpes, but failed to provide treatment;

(10) Defendant Abromowitz was deliberately indifferent when, although he was aware of Plaintiff's diagnosed auto-immune disorder, he refused to provide treatment;

(11) Defendant Dang was deliberately indifferent when, after Plaintiff was diagnosed with mild lupis by a rheumatology specialist, he refused to provide Plaintiff with treatment for lupis;

(12) Defendant Scribner was deliberately indifferent when he failed to respond to Plaintiff's complaints about medical treatment;

(13) Defendant Klarich was deliberately indifferent when he failed to respond

1    to Plaintiff's September 2004 complaints concerning Plaintiff's medical care;

2    (14) Defendant Thirakomen was deliberately indifferent when, with
     knowledge of Plaintiff's medical history and previously diagnosed conditions,
3    he refused to conduct further investigation or prescribe treatment; and

4    (15) Defendant Scribner was deliberately indifferent when, in 2005, he failed
     to respond to Plaintiff's complaints regarding medical care.
5

6          On February 28, 2011, Defendants filed a Motion for Summary Judgment. The Court

7    then issued a *Rand* warning to Plaintiff. (Doc. 71.) On September 1, 2011, Plaintiff filed a

8    response in opposition. On November 4, 2011, Defendants filed a Reply.

9                                    **STANDARD OF REVIEW**

10         The purpose of summary judgment is to avoid unnecessary trials when there is no

11   dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

12   1468, 1471 (9th Cir. 1994). Summary judgment is proper when "the movant shows that there

13   is no genuine dispute as to any material fact and the movant is entitled to a judgment as a

14   matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient

15   evidentiary basis on which a reasonable fact finder could find for the nonmovant, and a

16   dispute is "material" only if it could affect the outcome of the suit under the governing law.

17   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Matsushita Elec. Ind. Co. v.*

18   *Zenith Radio*, 475 U.S. 574, 587 (1986). The movant has the burden of showing the absence

19   of a genuine dispute, and the court must view all facts and draw all inferences in the light

20   most favorable to the nonmovant. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.

21   1982), *cert. denied*, 460 U.S. 1085 (1983).

22         Once the movant satisfies the requirements of Rule 56, the burden shifts to the

23   nonmovant to "set forth specific facts showing that there is a genuine issue for trial."

24   *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-

25   moving party "may not rely on denials in the pleadings but must produce specific evidence,

26   through affidavits or admissible discovery material, to show that the dispute exists," *Bhan*

27   *v. NME Hosp., Inc.*, 929 F.2d 1404 (9th Cir. 1991), and "must do more than simply show

28   that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

1   "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

2   insufficient." *Anderson*, 477 U.S. at 252.

3                                    **DISCUSSION**

4           Plaintiff was determined to have adequately stated a claim in Counts One (with

5   respect to Defendant Nurse Doe 1 now Defendant Chacon) (Second Amend. Compl. at 8),

6   Four (id. at 14), Six (id. at 18), Nine (id. at 22), Ten (id. at 23), Eleven (id. at 26), and

7   Fourteen (id. at 30). Defendants Hadsadsri, Kim, Abromowitz, Dang, and Thirakomen were

8   required to answer those claims.  Defendants Abromowitz, Dang and Thirakomen were

9   never properly served with process.  Later, Plaintiff properly added Defendant Chacon as a

10  party to this action.

11  **I. Defendants Hadsadsri, Kim, Chacon**

12          **A.  Eighth Amendment Violation**

13          To maintain a claim under the Eighth Amendment based on prison medical treatment,

14  a prisoner must show deliberate indifference to serious medical needs. *Estelle v. Gamble*,

15  429 U.S. 97, 104 (1976). To act with deliberate indifference, a prison official must both

16  know of and disregard an excessive risk to inmate health. *Farmer v. Brennan*, 511 U.S. 825,

17  837 (1994). The official must both be aware of facts from which the inference could be

18  drawn that a substantial risk of serious harm exists and he must also draw the inference. Id.

19  This subjective approach focuses upon the mental attitude of the defendant. Id. at 839.

20  "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060

21  (9th Cir. 2004). In the medical context, deliberate indifference may be shown by (1) a

22  purposeful act or failure to respond to a prisoner's pain or possible medical need and (2)

23  harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*citing*

24  *Estelle*, 429 U.S. at 104).

25          Medical malpractice or negligence is insufficient to establish a violation. *Toguchi,*

26  F.3d at 1060. Thus, mere negligence in diagnosing or treating a condition does not violate

27  the Eighth Amendment. *Toguchi,* 391 F.3d at 1057. Also, an inadvertent failure to provide

28  adequate medical care alone does not rise to the Eighth Amendment level. *Jett,* 429 F.3d at

1   1096. A difference in medical opinion also does not amount to deliberate indifference.

2   *Toguchi*, 391 F.3d at 1058. To prevail on a claim involving choices between alternative

3   courses of treatment, a prisoner must show that the chosen course was medically

4   unacceptable under the circumstances and was chosen in conscious disregard of an excessive

5   risk to the prisoner's health. *Id.*

6   **B. Undisputed Material Facts**

7   Based on a review of the record, including medical records, inmate administrative

8   grievance documents, declarations and deposition testimony, the Court finds the following

9   facts to be undisputed:

10  On December 7, 2001, an MTA responded to Plaintiff's cell following

11  his complaints of chest pain; Plaintiff was sent to the ACH emergency room

12  where Dr. Mies purportedly diagnosed him as suffering from pneumonia and

13  prescribed the antibiotic Keflex.  Deposition of Holt, pp. 39:9-40:3, 41:2-20,

14  and 83:8-84:6 (Ex. A).  Plaintiff indicates that he was seated in handcuffs

15  inside the medical office when he saw an MTA who was present throw away

16  a piece of paper; however, he does not know if the paper she threw away was

17  his prescription.  Deposition of Holt, pp. 83:21-84:15 (Ex. A). MTA Chacon's

18  first encounter with Mr. Holt was on January 3, 2002, she was not present in

19  the ACH Emergency Room on December 7, 2001 and has never discarded a

20  physician's order concerning an inmates' medical care.  Decl. of Chacon, ¶¶

21  3-7 (Ex. B).   Plaintiff's first visit with Dr. Hadsadsri occurred on February

22  28, 2002.  Plaintiff saw Dr. Hadsadsri following submission of a sick call slip

23  from within the Security Housing Unit.  Plaintiff presented with complaints of

24  headache and a funny feeling in his chest.  Mr. Holt described his chest as

25  burning, as though the pain arose from his stomach.  Deposition of Holt, pp.

26  54:9-21, 55:24-56:8 (Ex. A); Decl. Hasadsri ¶ 5 (Ex. C).  During the visit with

27  Dr. Hadsadsri, plaintiff told him about prior pneumonia and bronchitis

28  diagnosis by medical staff and related to him that a former cell mate of his had

mixed fecal material and anti-fungal creams into his tobacco which he later smoked. Deposition of Holt, p. 61:1-19 (Ex. A).  Further at said visit, nursing staff took plaintiff's vitals and Dr. Hasadsri performed a physical examination checking plaintiff's breath sounds and chest. Deposition of Holt, pp. 62:14-63:10 (Ex. A).  Dr. Hadsadsri also advised plaintiff that he had a positive history of Hepatitis A.  The positive result simply means that Mr. Holt either got vaccinated or had a past silent infection and then got the immunity, which is a good sign, but Mr. Holt failed to recognize that it is a normal finding and normal variation of lab value that is common, further he was unwilling to accept professional interpretation and explanation of the same by Dr. Hasadsri. Deposition of Holt, p. 64:8-11 (Ex. A); Decl. of Hasadsri ¶10 (Ex. C).  Dr. Hasadsri also noted that Plaintiff's medical records indicated that he was suffering from depression. Deposition of Holt, p. 65:24-25 (Ex. A).

Based on the description of his symptoms and his past history, Dr. Hasadsri's impression was Plaintiff suffered from headache, depression and Peptic Ulcer Disease.  Thus, he prescribed Prevacid for the peptic ulcer, Tylenol for headaches and advised Plaintiff follow up with psychiatric staff for his depression. Decl. of Hasadsri ¶ 5 (Ex. C). On September 2, 2002, Plaintiff was seen by Dr. Kim for complaints of a sore throat, ear ache, chest pain and dizziness.  Plaintiff further indicated that his chest pain was on the left side and had a stinging sensation.  Deposition of Holt, p.74:6-13 (Ex. A); Decl. of Kim ¶ 3 (Ex. D).  Dr. Kim's physical examination revealed clear lung and good heart sounds. Deposition of Holt, p. 74:14-25 (Ex. A); Decl. of Kim ¶ 3 (Ex. D). Plaintiff also relayed to Dr. Kim that he believes that his smoking of tobacco tainted by his former cell mate is a cause of his illness. Deposition of Holt, p. 75:14-22 (Ex. A).  Dr. Kim's assessment was that Plaintiff was experiencing atypical chest pain syndrome possibly gastroenteritis (heartburn) and viral pharyngitis (sorethroat).  Thus, to address the Gastroeteriti, he

1   prescribed Maalox an antacid, Tylenol for pain and discontinued Isosorbide.

2   To address the complaints of sore throat, he advised rest and gargling with salt

3   water as there was no significant pathology. Decl. of Kim ¶ 4 (Ex. D).  On

4   September 30, 2002, Mr. Holt presented to the medical clinic where he was

5   seen by Dr. Kim once again.  He complained of left side headache with facial

6   numbness and chest pain.  Mr. Holt described his headache as a squeezing in

7   nature without associated symptoms such as nausea and vomiting.  Mr. Holt's

8   headache occurred usually when he got excited or emotionally upset, as a

9   relieving factor Mr. Holt described that after sleep, usually his headache and

10   numbness resolved, but as a triggering factor, if he was emotionally disturbed

11   his symptoms got worse. Decl. of Kim ¶ 5 (Ex. D).  Dr. Kim's assessment was

12   possible depression with anxiety as the array of non-specific symptom

13   manifestation was suggestive of psychosomatic presentation of underlying

14   depression with anxiety.  As there is no radical treatment necessary, Dr. Kim

15   tried to explain to the Mr. Holt the underlying type of physiology of his

16   symptom and attempted to reassure the Mr. Holt, but Mr. Holt misinterpreted

17   the  explanation and became very upset and stated that he does not want any

18   antidepressants and no interview with a psychiatrist.  Decl. Kim ¶ 6 (Ex. D).

19   On March 10, 2003, Mr. Holt was seen by Dr. Hasadsri for complaints of gas

20   pain after eating.  During the examination, Plaintiff indicated that the pain was

21   without any associated nausea or vomiting. Decl. of Hasadsri ¶ 7 (Ex. C).

22   Following a review of Plaintiff's medical history, Dr. Hasadsri diagnosed

23   Plaintiff as suffering from gastritis. Hence, he prescribed Aciphex and Maalox

24   both of which are anti-acids to relieve Plaintiff's discomfort. Decl. of Hasadsri

25   ¶ 8 (Ex. C).  On October 15, 2002, Mr. Holt was again seen in the medical

26   clinic by Dr. Kim, with pretty much the complaints of as his last visit with Dr.

27   Kim, headache along with dizziness and chest pain. Mr. Holt stated that he has

28   been experiencing facial numbness on the left side of his face, there are

qualities like pins and needles sensation.  Mr. Holt also reported that he has been experiencing chest pain, which goes to his left arm and it feels numb and tingly. Decl. Kim ¶ 7 (Ex. D).Mr. Holt was attributing his symptom complex to the previous incident of his cell mate poisoning his tobacco and asked that this be further investigated with additional tests as he claimed a significantly altered lab value from prior blood tests. Decl. Kim ¶ 8-9 (Ex. D).  In response to this statement, Dr. Kim reviewed Plaintiff's labs which indicated a normal finding.  However, Mr. Holt continued to seek additional tests and has a fixed idea that he has significant disease.  Decl. Kim ¶ 9-10 (Ex. D).  Plaintiff's physical examination was normal, based on his subject current complaint and the objective data; the conclusion was that either Mr. Holt has some generalized anxiety disorder or possible hypochondriasis hence he was referred to psychiatric staff for follow up. Deposition of Holt, p. 76:21-23 (Ex. A); Decl. of Kim ¶ 7-11 (Ex. D).  Mr. Holt fails to recognize that his lab results are essentially normal.  Rather Mr. Holt has his own self interpretation of his labs, indicating that whenever he noted some values are off reference range and   noted to be as positive, he interpreted this as pathological. Decl. of Kim ¶ 9-12 (Ex. D). However, this is untrue and Mr. Holt is simply unwilling to accept professional interpretation and explanation of the same.

Following his visits with Dr. Hasadsri and Dr. Kim, plaintiff was seen years later by a rheumatologist who indicated that he may have a mild form of lupus. However, Plaintiff was not diagnosed any having any rheumatological disease or auto immune disorder. Deposition of Holt, p. 80:16-20 (Ex. A); Decl. of Kim ¶¶ 13-16 (Ex. D).   Plaintiff is not getting any treatment for lupus and he is not sure of what disorder he is suffering from if any. Deposition of Holt p. 86:4-8 (Ex. A.).  No physician has ever diagnosed plaintiff as suffering from an auto-immune disorder. Deposition of Holt, pp. 77:23-25, 80:18-20 (Ex. A).

### C.  Eighth Amendment Claims

#### 1.  Hasadsri/Kim

Plaintiff's claim against Defendant Hasadsri is, as follows:  Count 4:  Defendant Hadsadsri was deliberately indifferent when, after Plaintiff informed him of Plaintiff's previously diagnosed medical conditions including pneumonia, bronchitis and hepatitis A, Defendant Hadsadsri taunted Plaintiff and refused to provide treatment for any of the conditions.

Plaintiff's claim against Defendant Kim is, as follows: Count 6:  Defendant Kim was deliberately indifferent when he refused to investigate Plaintiff's illnesses or provide treatment even though he was aware that Plaintiff was experiencing symptoms of an autoimmune disorder.

Plaintiff's response in opposition to this motion offers no admissible evidence of deliberate indifference on the part of these defendants.  The gist of Plaintiff's opposition is that he disagrees with the medical opinions and treatment administered.  Plaintiff is not qualified to render a medical opinion concerning the course of treatment or tests he required. Generally, all of Plaintiff's positions are based on speculation and innuendo. In addition, any and all statements within his response interpreting his medical laboratory results or medical treatment required or any self-made diagnosis, is beyond the scope of Plaintiff's knowledge and expertise, rendering it irrelevant.  Even viewing the facts in the light most favorable to Plaintiff's position, the evidence does not establish the presence of a genuine dispute to preclude summary judgment.   Rather, they merely evidence Plaintiff's disagreement with the defendants' medical treatment of him.  However, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. *Toguchi,* 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

A difference of opinion between medical professionals concerning the appropriate

1  course of treatment generally does not amount to deliberate indifference to serious medical

2  needs. *See Toguchi,* 391 F.3d at 1059-60; *Sanchez*, 891 F.2d at 242. To establish that a

3  difference of opinion amounted to deliberate indifference, the prisoner "must show that the

4  course of treatment the doctors chose was medically unacceptable under the circumstances"

5  and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's]

6  health." *See Jackson,* 90 F.3d at 332; *see also Toguchi,* 391 F.3d at 1058.

7          A difference of opinion between the physician and the prisoner concerning the

8  appropriate course of treatment does not amount to deliberate indifference to serious medical

9  needs. *See Toguchi*, 391 F.3d at 1058; *Jackson*, 90 F.3d at 332; *Franklin,* 662 F.2d at 1344.

10  Similarly, a prisoner has no constitutional right to outside medical care to supplement the

11  medical care provided by the prison even where the prisoner is willing to pay for the

12  treatment. *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986).

13          Thus, Plaintiff has failed to set forth any triable issue of disputed facts to preclude

14  entry of summary judgment in favor of Defendants Hadsadsri and Kim.

15      **2.  Chacon**

16          Plaintiff's claim against Defendant Chacon is, as follows: In Count One: Plaintiff

17  claims that Defendant Mies diagnosed Plaintiff with pneumonia, prescribed an antibiotic as

18  treatment, and then gave the prescription to Defendant Chacon to give to the prison

19  pharmacy. Plaintiff alleges that Defendant Mies never verified that Chacon delivered the

20  prescription or ensured that Plaintiff received the prescription. Plaintiff claims he never

21  received the prescribed treatment and his condition worsened.

22          Viewing the evidence in a light most favorable to Plaintiff, he has not  established a

23  violation of his constitutional rights by MTA Chacon as there is no evidence that she treated

24  Plaintiff on December 7, 2001 as alleged or discarded the prescription allegedly written by

25  Dr. Mies to treat pneumonia.  Based on medical records, inmate grievance forms, deposition

26  testimony and affidavits/declarations, as set forth in the undisputed facts:

27          MTA Chacon did not have an encounter with Plaintiff in December 2001 and

28          did not discard any physician orders relating to his treatment.  (UF Nos. 1 and

1   3).   Indeed her only encounter with him during the winter of 2001-2002

2   occurred on January 3, 2002 when she responded to a call of man down in

3   housing location 4A, 4R3, for which she completed a CDCR Form 7219 -

4   Medical Report of Injury or Unusual Occurrence. (UF No. 3) . Moreover, the

5   evidence points to another unknown MTA having an encounter with Plaintiff

6   on December 7, 2001.   (UF No. 2 and 3).   Finally, Plaintiff himself

7   acknowledges that he cannot be sure that the MTA who was present during the

8   December 7, 2001 encounter threw away the prescription for antibiotics as he

9   claims in his complaint.  (UF No. 1) .

10   Hence, as there are no disputed facts to support a finding that MTA Chacon was

11   deliberately indifferent to Mr. Holt's serious medical needs on December 7, 2001 and

12   summary judgment will be resolved in her favor.

13   **II.  Unserved Defendants**

14   Three named Defendants were never properly served: Miels, Abromowitz, and

15   Thirakomen. The Court ordered that these Defendants be served by the U.S. Marshal with

16   the Summons and Second Amended Complaint. On June 4, 2009, the summons was returned

17   unexecuted on J. Abromowitz, as no longer employed by the facility. (Doc. 31.) Notice was

18   mailed to Plaintiff.  On January 19, 2010, the summons was returned unexecuted on Dang

19   and  Thirakomen, as no longer employed with the facility.  (Doc. 40.)  Notice was mailed

20   to Plaintiff.  The notations  on the returns reflected that these Defendants were no longer in

21   the CDC locator.

22   Under Fed. R. Civ. P. 4(c)(3) , the district court must direct the United States Marshal

23   or the Clerk of Court to effect service of process on behalf of all litigants proceeding in

24   forma pauperis (whether or not incarcerated) if requested by the plaintiff, and the court

25   retains the discretion to direct service on behalf of any other party upon motion of the party.

26   Where an in forma pauperis plaintiff is also incarcerated, he or she may rely upon the

27   Marshal to effect service after providing the Marshal with all necessary information, and the

28   plaintiff's action should not be dismissed based on the Marshal's failure to effect service. *See*

1   *Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991). An in forma pauperis action may

2   be dismissed, however, where the plaintiff cannot demonstrate that he provided the Marshal

3   with sufficient information and/or a specific request. *Id.* Failure to serve the defendants

4   within 120 days may result in dismissal of the action unless the plaintiff can demonstrate

5   good cause for the untimely service. Inadvertence or ignorance of the rule alone does not

6   constitute good cause, even in a pro se action. *Townsel v. Couny of Contra Costa*, 820 F.2d

7   319, 320 (9th Cir. 1987).

8         These Defendants will be dismissed for failure to effect timely service of process

9   pursuant to Fed.R.Civ.P. 4(m).

10                              **CONCLUSION**

11         Viewing the facts in a light most favorable to Plaintiff, this Court finds that there are

12   no genuine questions of material triable fact precluding resolution of this action by

13   dispositive motion.

14         Based on the foregoing,

15         IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. 67) is

16   **GRANTED**.

17         IT IS FURTHER ORDERED that Defendants Abromowitz, Dang, and Thirakomen

18   are **DISMISSED** with prejudice for failure to effect service of process.  Fed.R.Civ.P. 4(m).

19         IT IS FURTHER ORDERED that this action is **DISMISSED** with prejudice.  A Final

20   Judgment shall enter separately. This action is **CLOSED**; each party to bear their own

21   attorney fees and costs.

22         DATED this 1st day of December, 2011.

23

24

25                                      David C. Bury

26                              United States District Judge

27

28