IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Virgil E. Holt, | ) | CV-1-06-1719-DCB P |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| A. K. Scribner, et al., | ) | |
| Defendants. | ) | |

Defendants' Motion for Summary Judgment is pending before the Court.

**BACKGROUND**

On November 29, 2006, Plaintiff Virgil E. Holt, currently confined in the California State Prison in Lancaster, California, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. On October 30, 2008, the Court dismissed the Complaint with leave to amend. This case was reassigned to the undersigned judge on November 26, 2008. On the same date, the Court also granted Plaintiff a 30-day extension of time to file an amended complaint. On December 31, 2008, Plaintiff filed a Second Motion for Extension of Time. On January 5, 2008, Plaintiff filed a First Amended Complaint. On February 20, 2009, Plaintiff filed a Second Amended Complaint (SAC). The Court then ordered Defendants Hadsadsri, Kim, Abromowitz, Dang, and Thirakomen to answer Counts Four, Six, Nine, Ten, Eleven, and Fourteen of the Second Amended Complaint and dismissed the remaining claims and Defendants.

Plaintiff names the following Defendants, who were employed at the California State Prison-Corcoran, in the Second Amended Complaint: Warden A.K. Scribner; Dr. J. Dang;

Dr. Clive Greaves; Dr. Hadsadsri; Dr. J. Kim; Chief Medical Officer Dr. John D. Klarich; Dr. Mies; Dr. J. Abromowitz; Dr. K. Thirakomen; and Does 1–5.

Originally Plaintiff raised 15 claims for relief in his SAC:

(1) Defendant Mies was deliberately indifferent to Plaintiff's serious medical needs when he failed to ensure that Plaintiff received prescribed treatment and Defendant Nurse Doe 1 (Defendant Chacon) was deliberately indifferent when he or she failed to deliver the prescribed treatment order to the prison pharmacy and, instead, threw it in the trash;

(2) Defendant Dang was deliberately indifferent when he ordered lab tests for Plaintiff but refused to provide immediate treatment for Plaintiff's previously diagnosed pneumonia and informed Plaintiff that he had forgotten to write a lab order for tests to determine appropriate treatment;

(3) Defendant Dang was deliberately indifferent when he diagnosed Plaintiff with bronchitis but refused to prescribe treatment and stated "it will go away on its own";

(4) Defendant Hadsadsri was deliberately indifferent when, after Plaintiff informed him of Plaintiff's previously diagnosed medical conditions including pneumonia, bronchitis and hepatitis A, Defendant Hadsadsri taunted Plaintiff and refused to provide treatment for any of the conditions;

5) Defendant Greaves was deliberately indifferent when he failed to ensure that Plaintiff received the lab test and prescription medications that Defendant Greaves ordered and Defendant Doe 3 failed to deliver Defendant Greaves' medical orders to the prison pharmacy;

(6) Defendant Kim was deliberately indifferent when he refused to investigate Plaintiff's illnesses or provide treatment even though he was aware that Plaintiff was experiencing symptoms of an autoimmune disorder;

(7) Defendants Mies, Dang, Hadsadsri, Greaves, and Kim refused to provide treatment for Plaintiff's multiple medical conditions;

(8) Defendant Klarich failed to respond to Plaintiff's letter complaining about his medical treatment;

(9) Defendant Abromowitz was deliberately indifferent when he diagnosed Plaintiff with herpes, but failed to provide treatment;

(10) Defendant Abromowitz was deliberately indifferent when, although he was aware of Plaintiff's diagnosed auto-immune disorder, he refused to provide treatment;

(11) Defendant Dang was deliberately indifferent when, after Plaintiff was diagnosed with mild lupis by a rheumatology specialist, he refused to provide Plaintiff with treatment for lupis;

(12) Defendant Scribner was deliberately indifferent when he failed to respond to Plaintiff's complaints about medical treatment;

(13) Defendant Klarich was deliberately indifferent when he failed to respond

to Plaintiff's September 2004 complaints concerning Plaintiff's medical care;

(14) Defendant Thirakomen was deliberately indifferent when, with knowledge of Plaintiff's medical history and previously diagnosed conditions, he refused to conduct further investigation or prescribe treatment; and

(15) Defendant Scribner was deliberately indifferent when, in 2005, he failed to respond to Plaintiff's complaints regarding medical care.

On February 28, 2011, Defendants filed a Motion for Summary Judgment. The Court then issued a *Rand* warning to Plaintiff. (Doc. 71.) On September 1, 2011, Plaintiff filed a response in opposition. On November 4, 2011, Defendants filed a Reply.

**STANDARD OF REVIEW**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmovant, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). The movant has the burden of showing the absence of a genuine dispute, and the court must view all facts and draw all inferences in the light most favorable to the nonmovant. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982), *cert. denied*, 460 U.S. 1085 (1983).

Once the movant satisfies the requirements of Rule 56, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiff was determined to have adequately stated a claim in Counts One (with respect to Defendant Nurse Doe 1 now Defendant Chacon) (Second Amend. Compl. at 8), Four (id. at 14), Six (id. at 18), Nine (id. at 22), Ten (id. at 23), Eleven (id. at 26), and Fourteen (id. at 30). Defendants Hadsadsri, Kim, Abromowitz, Dang, and Thirakomen were required to answer those claims. Defendants Abromowitz, Dang and Thirakomen were never properly served with process. Later, Plaintiff properly added Defendant Chacon as a party to this action.

**I. Defendants Hadsadsri, Kim, Chacon**

    **A.  Eighth Amendment Violation**

To maintain a claim under the Eighth Amendment based on prison medical treatment, a prisoner must show deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. This subjective approach focuses upon the mental attitude of the defendant. Id. at 839. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). In the medical context, deliberate indifference may be shown by (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*citing Estelle*, 429 U.S. at 104).

Medical malpractice or negligence is insufficient to establish a violation. *Toguchi,* 391 F.3d at 1060. Thus, mere negligence in diagnosing or treating a condition does not violate the Eighth Amendment. *Toguchi,* 391 F.3d at 1057. Also, an inadvertent failure to provide adequate medical care alone does not rise to the Eighth Amendment level. *Jett,* 429 F.3d at

- 4 -

1096. A difference in medical opinion also does not amount to deliberate indifference. *Toguchi*, 391 F.3d at 1058. To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health. *Id*.

**B. Undisputed Material Facts**

Based on a review of the record, including medical records, inmate administrative grievance documents, declarations and deposition testimony, the Court finds the following facts to be undisputed:

>On December 7, 2001, an MTA responded to Plaintiff's cell following his complaints of chest pain; Plaintiff was sent to the ACH emergency room where Dr. Mies purportedly diagnosed him as suffering from pneumonia and prescribed the antibiotic Keflex. Deposition of Holt, pp. 39:9-40:3, 41:2-20, and 83:8-84:6 (Ex. A). Plaintiff indicates that he was seated in handcuffs inside the medical office when he saw an MTA who was present throw away a piece of paper; however, he does not know if the paper she threw away was his prescription. Deposition of Holt, pp. 83:21-84:15 (Ex. A). MTA Chacon's first encounter with Mr. Holt was on January 3, 2002, she was not present in the ACH Emergency Room on December 7, 2001 and has never discarded a physician's order concerning an inmates' medical care. Decl. of Chacon, ¶¶ 3-7 (Ex. B). Plaintiff's first visit with Dr. Hadsadsri occurred on February 28, 2002. Plaintiff saw Dr. Hadsadsri following submission of a sick call slip from within the Security Housing Unit. Plaintiff presented with complaints of headache and a funny feeling in his chest. Mr. Holt described his chest as burning, as though the pain arose from his stomach. Deposition of Holt, pp. 54:9-21, 55:24-56:8 (Ex. A); Decl. Hasadsri ¶ 5 (Ex. C). During the visit with Dr. Hadsadsri, plaintiff told him about prior pneumonia and bronchitis diagnosis by medical staff and related to him that a former cell mate of his had

- 5 -

1  mixed fecal material and anti-fungal creams into his tobacco which he later
2  smoked. Deposition of Holt, p. 61:1-19 (Ex. A). Further at said visit, nursing
3  staff took plaintiff's vitals and Dr. Hasadsri performed a physical examination
4  checking plaintiff's breath sounds and chest. Deposition of Holt, pp. 62:14-
5  63:10 (Ex. A). Dr. Hadsadsri also advised plaintiff that he had a positive
6  history of Hepatitis A. The positive result simply means that Mr. Holt either
7  got vaccinated or had a past silent infection and then got the immunity, which
8  is a good sign, but Mr. Holt failed to recognize that it is a normal finding and
9  normal variation of lab value that is common, further he was unwilling to
10 accept professional interpretation and explanation of the same by Dr. Hasadsri.
11 Deposition of Holt, p. 64:8-11 (Ex. A); Decl. of Hasadsri ¶10 (Ex. C). Dr.
12 Hasadsri also noted that Plaintiff's medical records indicated that he was
13 suffering from depression. Deposition of Holt, p. 65:24-25 (Ex. A).

14        Based on the description of his symptoms and his past history, Dr.
15 Hasadsri's impression was Plaintiff suffered from headache, depression and
16 Peptic Ulcer Disease. Thus, he prescribed Prevacid for the peptic ulcer,
17 Tylenol for headaches and advised Plaintiff follow up with psychiatric staff for
18 his depression. Decl. of Hasadsri ¶ 5 (Ex. C). On September 2, 2002, Plaintiff
19 was seen by Dr. Kim for complaints of a sore throat, ear ache, chest pain and
20 dizziness. Plaintiff further indicated that his chest pain was on the left side
21 and had a stinging sensation. Deposition of Holt, p.74:6-13 (Ex. A); Decl. of
22 Kim ¶ 3 (Ex. D). Dr. Kim's physical examination revealed clear lung and
23 good heart sounds. Deposition of Holt, p. 74:14-25 (Ex. A); Decl. of Kim ¶ 3
24 (Ex. D). Plaintiff also relayed to Dr. Kim that he believes that his smoking of
25 tobacco tainted by his former cell mate is a cause of his illness. Deposition of
26 Holt, p. 75:14-22 (Ex. A). Dr. Kim's assessment was that Plaintiff was
27 experiencing atypical chest pain syndrome possibly gastroenteritis (heartburn)
28 and viral pharyngitis (sorethroat). Thus, to address the Gastroeteriti, he

- 6 -

1  prescribed Maalox an antacid, Tylenol for pain and discontinued Isosorbide.
2  To address the complaints of sore throat, he advised rest and gargling with salt
3  water as there was no significant pathology. Decl. of Kim ¶ 4 (Ex. D).  On
4  September 30, 2002, Mr. Holt presented to the medical clinic where he was
5  seen by Dr. Kim once again.  He complained of left side headache with facial
6  numbness and chest pain.  Mr. Holt described his headache as a squeezing in
7  nature without associated symptoms such as nausea and vomiting.  Mr. Holt's
8  headache occurred usually when he got excited or emotionally upset, as a
9  relieving factor Mr. Holt described that after sleep, usually his headache and
10 numbness resolved, but as a triggering factor, if he was emotionally disturbed
11 his symptoms got worse. Decl. of Kim ¶ 5 (Ex. D).  Dr. Kim's assessment was
12 possible depression with anxiety as the array of non-specific symptom
13 manifestation was suggestive of psychosomatic presentation of underlying
14 depression with anxiety.  As there is no radical treatment necessary, Dr. Kim
15 tried to explain to the Mr. Holt the underlying type of physiology of his
16 symptom and attempted to reassure the Mr. Holt, but Mr. Holt misinterpreted
17 the  explanation and became very upset and stated that he does not want any
18 antidepressants and no interview with a psychiatrist.  Decl. Kim ¶ 6 (Ex. D).
19 On March 10, 2003, Mr. Holt was seen by Dr. Hasadsri for complaints of gas
20 pain after eating.  During the examination, Plaintiff indicated that the pain was
21 without any associated nausea or vomiting. Decl. of Hasadsri ¶ 7 (Ex. C).
22 Following a review of Plaintiff's medical history, Dr. Hasadsri diagnosed
23 Plaintiff as suffering from gastritis.  Hence, he prescribed Aciphex and Maalox
24 both of which are anti-acids to relieve Plaintiff's discomfort. Decl. of Hasadsri
25 ¶ 8 (Ex. C).  On October 15, 2002, Mr. Holt was again seen in the medical
26 clinic by Dr. Kim, with pretty much the complaints of as his last visit with Dr.
27 Kim, headache along with dizziness and chest pain. Mr. Holt stated that he has
28 been experiencing facial numbness on the left side of his face, there are

- 7 -

1    qualities like pins and needles sensation.  Mr. Holt also reported that he has
2    been experiencing chest pain, which goes to his left arm and it feels numb and
3    tingly. Decl. Kim ¶ 7 (Ex. D).Mr. Holt was attributing his symptom complex
4    to the previous incident of his cell mate poisoning his tobacco and asked that
5    this be further investigated with additional tests as he claimed a significantly
6    altered lab value from prior blood tests. Decl. Kim ¶ 8-9 (Ex. D).  In response
7    to this statement, Dr. Kim reviewed Plaintiff's labs which indicated a normal
8    finding.  However, Mr. Holt continued to seek additional tests and has a fixed
9    idea that he has significant disease.  Decl. Kim ¶ 9-10 (Ex. D).  Plaintiff's
10   physical examination was normal, based on his subject current complaint and
11   the objective data; the conclusion was that either Mr. Holt has some
12   generalized anxiety disorder or possible hypochondriasis hence he was
13   referred to psychiatric staff for follow up. Deposition of Holt, p. 76:21-23 (Ex.
14   A); Decl. of Kim ¶ 7-11 (Ex. D).  Mr. Holt fails to recognize that his lab
15   results are essentially normal.  Rather Mr. Holt has his own self interpretation
16   of his labs, indicating that whenever he noted some values are off reference
17   range and   noted to be as positive, he interpreted this as pathological. Decl.
18   of Kim ¶ 9-12 (Ex. D). However, this is untrue and Mr. Holt is simply
19   unwilling to accept professional interpretation and explanation of the same.
20    Following his visits with Dr. Hasadsri and Dr. Kim, plaintiff was seen years
21   later by a rheumatologist who indicated that he may have a mild form of lupus.
22   However, Plaintiff was not diagnosed any having any rheumatological disease
23   or auto immune disorder. Deposition of Holt, p. 80:16-20 (Ex. A); Decl. of
24   Kim ¶¶ 13-16 (Ex. D).   Plaintiff is not getting any treatment for lupus and he
25   is not sure of what disorder he is suffering from if any. Deposition of Holt p.
26   86:4-8 (Ex. A.).  No physician has ever diagnosed plaintiff as suffering from
27   an auto-immune disorder. Deposition of Holt, pp. 77:23-25, 80:18-20 (Ex. A).
28

### C. Eighth Amendment Claims

#### 1. Hasadsri/Kim

Plaintiff's claim against Defendant Hasadsri is, as follows: Count 4: Defendant Hadsadsri was deliberately indifferent when, after Plaintiff informed him of Plaintiff's previously diagnosed medical conditions including pneumonia, bronchitis and hepatitis A, Defendant Hadsadsri taunted Plaintiff and refused to provide treatment for any of the conditions.

Plaintiff's claim against Defendant Kim is, as follows: Count 6: Defendant Kim was deliberately indifferent when he refused to investigate Plaintiff's illnesses or provide treatment even though he was aware that Plaintiff was experiencing symptoms of an autoimmune disorder.

Plaintiff's response in opposition to this motion offers no admissible evidence of deliberate indifference on the part of these defendants. The gist of Plaintiff's opposition is that he disagrees with the medical opinions and treatment administered. Plaintiff is not qualified to render a medical opinion concerning the course of treatment or tests he required. Generally, all of Plaintiff's positions are based on speculation and innuendo. In addition, any and all statements within his response interpreting his medical laboratory results or medical treatment required or any self-made diagnosis, is beyond the scope of Plaintiff's knowledge and expertise, rendering it irrelevant. Even viewing the facts in the light most favorable to Plaintiff's position, the evidence does not establish the presence of a genuine dispute to preclude summary judgment. Rather, they merely evidence Plaintiff's disagreement with the defendants' medical treatment of him. However, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. *Toguchi,* 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

A difference of opinion between medical professionals concerning the appropriate

1  course of treatment generally does not amount to deliberate indifference to serious medical
2  needs. *See Toguchi,* 391 F.3d at 1059-60; *Sanchez*, 891 F.2d at 242. To establish that a
3  difference of opinion amounted to deliberate indifference, the prisoner "must show that the
4  course of treatment the doctors chose was medically unacceptable under the circumstances"
5  and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's]
6  health." *See Jackson,* 90 F.3d at 332; *see also Toguchi*, 391 F.3d at 1058.

7      A difference of opinion between the physician and the prisoner concerning the
8  appropriate course of treatment does not amount to deliberate indifference to serious medical
9  needs. *See Toguchi*, 391 F.3d at 1058; *Jackson*, 90 F.3d at 332; *Franklin,* 662 F.2d at 1344.
10 Similarly, a prisoner has no constitutional right to outside medical care to supplement the
11 medical care provided by the prison even where the prisoner is willing to pay for the
12 treatment. *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986).

13     Thus, Plaintiff has failed to set forth any triable issue of disputed facts to preclude
14 entry of summary judgment in favor of Defendants Hadsadsri and Kim.

15     **2. Chacon**

16     Plaintiff's claim against Defendant Chacon is, as follows: In Count One: Plaintiff
17 claims that Defendant Mies diagnosed Plaintiff with pneumonia, prescribed an antibiotic as
18 treatment, and then gave the prescription to Defendant Chacon to give to the prison
19 pharmacy. Plaintiff alleges that Defendant Mies never verified that Chacon delivered the
20 prescription or ensured that Plaintiff received the prescription. Plaintiff claims he never
21 received the prescribed treatment and his condition worsened.

22     Viewing the evidence in a light most favorable to Plaintiff, he has not established a
23 violation of his constitutional rights by MTA Chacon as there is no evidence that she treated
24 Plaintiff on December 7, 2001 as alleged or discarded the prescription allegedly written by
25 Dr. Mies to treat pneumonia. Based on medical records, inmate grievance forms, deposition
26 testimony and affidavits/declarations, as set forth in the undisputed facts:

27     MTA Chacon did not have an encounter with Plaintiff in December 2001 and
28     did not discard any physician orders relating to his treatment.  (UF Nos. 1 and

1 3). Indeed her only encounter with him during the winter of 2001-2002
2 occurred on January 3, 2002 when she responded to a call of man down in
3 housing location 4A, 4R3, for which she completed a CDCR Form 7219 -
4 Medical Report of Injury or Unusual Occurrence. (UF No. 3) . Moreover, the
5 evidence points to another unknown MTA having an encounter with Plaintiff
6 on December 7, 2001. (UF No. 2 and 3). Finally, Plaintiff himself
7 acknowledges that he cannot be sure that the MTA who was present during the
8 December 7, 2001 encounter threw away the prescription for antibiotics as he
9 claims in his complaint. (UF No. 1) .

Hence, as there are no disputed facts to support a finding that MTA Chacon was deliberately indifferent to Mr. Holt's serious medical needs on December 7, 2001 and summary judgment will be resolved in her favor.

**II. Unserved Defendants**

Three named Defendants were never properly served: Miels, Abromowitz, and Thirakomen. The Court ordered that these Defendants be served by the U.S. Marshal with the Summons and Second Amended Complaint. On June 4, 2009, the summons was returned unexecuted on J. Abromowitz, as no longer employed by the facility. (Doc. 31.) Notice was mailed to Plaintiff. On January 19, 2010, the summons was returned unexecuted on Dang and Thirakomen, as no longer employed with the facility. (Doc. 40.) Notice was mailed to Plaintiff. The notations on the returns reflected that these Defendants were no longer in the CDC locator.

Under Fed. R. Civ. P. 4(c)(3), the district court must direct the United States Marshal or the Clerk of Court to effect service of process on behalf of all litigants proceeding in forma pauperis (whether or not incarcerated) if requested by the plaintiff, and the court retains the discretion to direct service on behalf of any other party upon motion of the party. Where an in forma pauperis plaintiff is also incarcerated, he or she may rely upon the Marshal to effect service after providing the Marshal with all necessary information, and the plaintiff's action should not be dismissed based on the Marshal's failure to effect service. *See*

1  *Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991). An in forma pauperis action may
2  be dismissed, however, where the plaintiff cannot demonstrate that he provided the Marshal
3  with sufficient information and/or a specific request. *Id.* Failure to serve the defendants
4  within 120 days may result in dismissal of the action unless the plaintiff can demonstrate
5  good cause for the untimely service. Inadvertence or ignorance of the rule alone does not
6  constitute good cause, even in a pro se action. *Townsel v. Couny of Contra Costa*, 820 F.2d
7  319, 320 (9th Cir. 1987).

8  These Defendants will be dismissed for failure to effect timely service of process
9  pursuant to Fed.R.Civ.P. 4(m).

## CONCLUSION

11  Viewing the facts in a light most favorable to Plaintiff, this Court finds that there are
12  no genuine questions of material triable fact precluding resolution of this action by
13  dispositive motion.

14  Based on the foregoing,

15  IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. 67) is
16  **GRANTED**.

17  IT IS FURTHER ORDERED that Defendants Abromowitz, Dang, and Thirakomen
18  are **DISMISSED** with prejudice for failure to effect service of process. Fed.R.Civ.P. 4(m).

19  IT IS FURTHER ORDERED that this action is **DISMISSED** with prejudice. A Final
20  Judgment shall enter separately. This action is **CLOSED**; each party to bear their own
21  attorney fees and costs.

22  DATED this 1st day of December, 2011.

David C. Bury
United States District Judge